Cabuthebs, J.,
delivered the opinion of the court.
The question in this case is, whether the chancellor erred in sustaining the demurrer of the defendants. The bill charges that an execution in favor of Morgan & Co., for $3500, issued from the November term, 1853, of the circuit court of Eranklin county, against Jonathan S. Dechard, came to the hands of the Sheriff of said county, and was levied on one mare and three mules, as the property of said Jonathan, who entered into a bond with David Dechard as his surety, for the delivery of said property in Winchester, on the 1st Monday in March, then next ensuing. That after the bond was given, and before the day for the delivery of the property, (which day had not yet arrived when the bill was filed,) defendant, Edwards, took out an attachment from a justice of the peace, put the same into the hands of defendant, Burt, a constable; who levied the same upon the said mare and mules, and took them off, with a full knowledge ' of the former levy, delivery bond, &c. The property was demanded, *98 refused to be delivered up, and sold under said attachment proceeding.
The prayer is, that the property be delivered, or its value accounted for by the defendants. The bill is filed by the said Jonathan S. and David, and the sheriff, Gonce. At the time, the demurrer was sustained, leave was given to amend, and the said David filed an amended or supplemental bill in his own name, upon the same state of facts, with the additional fact, that he had in the mean time _ been compelled to pay the value of the property, and praying to have the benefit of the execution lien upon the property. A demurrer to this was also sustained, and, an appeal to this court.
1. In support of the judgment sustaining the first demurrer, it is argued, that the judgment debtor, and his surety in the delivery bond, had no joint interest with the sheriff to enforce the lien, and if any one had such joint interest, it was the judgment creditors, Morgan & Co. The object of the bill is, not to enforce the lien and protect the property for the benefit of Morgan & Co., they have ample security in the delivery bond, and no interest in looking after the property. 10 Yerg. It., 316. But, David Dechard, who had become surety for the delivery of the property, or payment of its value to them, has an interest in the protection of the property, and for that purpose has a right to the benefit of the lien upon it, as against all junior liens or executions. The only difficulty in the case upon this point, is, whether there is not a misjoinder of parties, for the want of any interest in the matter by the execution debtor and the sheriff.
*99 The sheriff still had a prospective duty to perform in relation to this property, by selling it under his levy, if delivered on the day designated, and applying the proceeds to the execution in his hands, and the execution debtor had entered into joint bond with David as surety, to have it forthcoming on the day , appointed for sale.
Each of the complainants had either a duty to per- • form, or an interest in this property, and might very-well unite in any legal measures for its protection and proper application. Under these circumstances, it would be inconsistent with the liberalized practice and rules of pleading of the present day, to defeat by demurrer, a clear equity, for multifariousness, or misjoinder, as to parties, in a case like this. But this objection could not have been sustained before the reformation. It is true, that it is laid down as a rule, that an entire want of interest in any one of the complainants, is demurra-ble. Story on Eq. PL, 509. But, in the next section it is written, “that a mere scintilla juris, in one of the plaintiffs, as for example, a naked title in a trustee to serve a mere power of appointment, will be sufficient to justify malting him a plaintiff for the purposes of the trust, with the other persons in interest.” In a note to this section, the case of Rhodes vs. Washburton, in 6 Sim. R., 617, is cited, where the vice chancellor said, “legatees cannot file a bill against a debtor to the testator’s estate, except,” &c. But if the executor chooses to make the legatees co-plaintiffs with him, I do not think superfluity renders the record not sustainable. Persons are brought here, who are not necessary parties to the suit, but it is not so injurious, as to make the bill not *100 sustainable. It is not an objection that a defendant can take.”
It is not intended, however, to say that a person having no interest, power or duty connected with the litigation, can be made a party plaintiff in a bill. In such a case, a demurrer would lie, and the objection be fatal, unless cured by amendment. But in the case under consideration, all the complainants had such a connection with the subject matter of litigation, as to make it allowable, though perhaps not indispensible, that they should join in the bill. But, if the objection was well taken to the original bill, as to the question of parties, was it not cured by the amendment?
2. It is insisted that the bill does not present a case for the interference of a court of chancery and equitable relief, and was for that demurrable. In the case of Parish vs. Sanders & Martin, 3 Humph., 432, it is decided, that if property be taken by virtue of process issued by a magistrate, after the test of an execution upon a prior court judgment, the creditor in the latter, “may ask the protection of a court of chancery for his superior lien.”
And this relief would be extended, whether his execution had been levied or not against any one thus placing obstructions in his way. These obstacles to the enforcement of his prior right of lien, could properly be removed by a court of equity. So, it is clear that Morgan & Co., the judgment creditor, would have had a clear and unquestionable right, if their lien subsisted at the time this property was taken by the defendants, to have obtained relief in equity against them. That their lien did then exist, admits of no question. *101 This is expressly settled in the case of Malone vs. Abbott, 3 Humph., 532. The principle there decided is, that where an execution is levied, and bond for delivery taken, the lien of the execution continues until the bond is forfeited. Lester’s case, 4 Humph., 383, recognizes the same principle. The question as to the continuance of the lien after the forfeiture, does not arise in this case, as the property was seized and converted by the defendants, before the forfeiture or day of delivery.
The only remaining question is, as to the right of complainant, David Dechard, to the benefit of the execution lien in this case, or his right to have the property on which the lien exists, and for the application of which, to the debt he has become bound, protected for that purpose.
There can be no doubt, but that Morgan & Co., by virtue of their lien, could have filed this bill, and prevailed, as did Sanders & Martin vs. Parrish. This is not controverted by the argument, but it is insisted that the complainant cannot do the same, except upon application to, and refusal by the creditor to do so.
"We are not aware of any such principle. Here the general lien of Morgan & Co. was fixed by the levy upon this particular property, which passed into the custody of the law, and the possession and control of the sheriff; but by the execution of the delivery bond, under the act of 1831, it returned into the possession of the defendant in the execution, but was still subject to the lien. In addition, however, to the lien, the creditor has now the obligation of the surety in the *102 bond, that this particular property, or its value, shall be applied to his debt.
Under such circumstances, the creditor would have a clear right,. by virtue of his lien, to look to the property of his debtor,' and protect it from all others; or, resort to the security for its delivery, after the forfeiture of the bond at his election. It is certainly a clear principle, that the surety has a right to avail himself of all the liens, rights and advantages of the creditor against the principal debtor, or his property; the right of substitution. McNairy vs. Eastland, 10 Yer. R.
In the case of Malone vs. Abbott, in assigning the reasons for the continuation of the execution lien, the court say: “this view of the subject seems proper, in order that securities may not be involved in difficulty, by . finding the property of their principal in the hands of the officer by virtue of a junior execution, so that, although they may be bound by the law to deliver it, to satisfy one execution, they will be prevented from doing so, by law, in consequence . of the levy of another. ”
This is a clear recognition of the right of the surety on the delivery bond, to avail himself of the execution lien so as to protect the property, for the delivery of which he is bound, from the invasion of junior claims. It is just and reasonable that this should be so. The execution gave a lien generally upon all the property of the debtor from its test to the plaintiff, and the levy converted this lien into a right to the property, upon which .it was made, in the officer, for the benefit of the creditor.
*103 This right was sufficient to sustain an action of detinue or trover by the sheriff. But upon the execution of a bond to deliver on the day of sale, with good security, the sheriff was bound to surrender the property again to the defendant, and could have no other control over it by virtue of his original levy, until redelivered to him under the bond. If in the intermediate time, the debtor should attempt to run off, or dispose of the property, or a younger execution and attachment should be levied upon it, by which means the security is in danger of suffering, or the first claim upon it about to be defeated, is it not most just and proper that the law should interfere? But no one can sue in a comt of law. The surety has no title to the property, nor has the sheriff since he surrendered it on the execution of the delivery bond, as it would seem from former decisions, and the right of the plaintiff in the execution, is only a general lien. So it is apparent that there is no remedy at law, but only in a court of equity.
We think, therefore, that there is equity in the bill, and that the demurrer should not have been sustained.
The decision is reversed, and the cause remanded for an answer to the bill, and farther proceedings.